357 So.2d 1350 (1978)
Homer Gerald OUTLAW et al.
v.
BITUMINOUS INSURANCE COMPANY.
No. 8925.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
Rehearing Denied May 10, 1978.
Writ Refused June 30, 1978.
*1352 Charles A. Kronlage, Jr., Kronlage, Dittmann & Caswell, New Orleans, for plaintiffs-appellees.
Harold A. Thomas, Adams & Reese, New Orleans, for defendant-appellant.
Philip S. Brooks, City Atty., Jules A. Fontana, Jr., Deputy City Atty., for third party defendant-appellee.
Before REDMANN, LEMMON and GULOTTA, JJ.
REDMANN, Judge.
Does a mature golfer by driving a golf ball breach a duty towards a nine-year-old golfer who is but slightly (13° to 22°[1]) to the left of his intended drive line and only 172 feet away, but is aware of and (ignoring whether a nine-year-old legally can consent) has consented to the impending drive (as a golfer allowing another to play through) and has crouched behind his own golf bag for protection from the golf ball? We answer yes: the mature golfer, just like the automobile driver,[2] must be aware that young children possess limited judgment and are likely at times to forget dangers and behave thoughtlessly, and therefore he should anticipate that the nine-year-old might raise his head above or otherwise leave the protective cover of his golf bag and place himself into the path of a possible bad shot: and, because of the nearness of the child to the tee and the consequent impossibility of a timely warning to the child to return to cover after the ball is struck and its path evident, the mature golfer owes to the child a duty not to drive the ball at all in his general direction.
Defendant's insured did drive the ball, the nine-year-old did raise his head above his golf bag, and the ball struck him in the eye, destroying its sight.
Murphy v. Podgurski, La.App. 4 Cir. 1970, 236 So.2d 508, writ refused 256 La. 867, 239 So.2d 363, reasoning that a player is not negligent in making a bad shot and that other golfers assume the risk of bad shots, is not in point. Our defendant's insured's negligence was not in hitting the ball badly (a matter not fully within his control) but in hitting the ball at all.
The jury's special findings that the driver was negligent and the boy contributorily negligent but that the driver had the last clear chance are largely consistent with our analysis. Ignoring the question of the validity of a nine-year-old's consent to a play-through (if he could not consent, the driver would breach a duty towards him by playing through without consent), we assume the jury found negligence on the driver's part in driving at all under the circumstances, found the child negligent in staying on the fairway or in raising his head from safety into danger, and found the golfer had the last clear chance because he could have not hit the ball. Rather than excuse contributory negligence on a last-clear-chance theory, however, we hold that the child's negligence (if any) was not contributorily negligence barring his recovery. A nine-year-old may be capable of contributory negligence, but like a 12-year-old, Plauche v. Consolidated Companies, 1958, 235 La. 692, 105 So.2d 269, he is not held to adult standards of comprehension of danger and duty of self-care. We may assume that *1353 the jury properly evaluated this child's awareness of danger and properly concluded that he was negligent. But his negligence cannot be both the foreseen risk which imposes the duty on the mature golfer not to hit the ball and at the same time a defense to an action for damages for breach of the mature golfer's duty. The youngster's leaving a place of safety cannot both impose a duty and excuse its breach.
We therefore affirm the judgment on jury verdict as to liability.
On quantum, $150,000 for general damages including loss of sight in one eye is within the jury's "much discretion", La.C.C. 1934(3). See Walker v. Champion, La.1974, 288 So.2d 44.
The judgment over against the father for half was the result of the jury's finding that the father was negligent. One might view as unreasonable and therefore negligent a parent's allowing a too-young child to subject himself to the inherent dangers of a golf course, present even without negligent conduct by other golfers. Conceivably such a parent could owe damages to the child for loss of an eye caused by non-negligent injury by a golf ball. And, more remotely conceivably, the parent might owe damages to the child for injury from another golfer's negligence (although this is quite doubtful because the risk of non-negligent injury alone is the source of the parent's arguable duty to keep the child off the golf course, and therefore negligent injury is not within the risk which the duty is designed to protect against). Even so, the parent would be entitled to judgment over of 100% tort-indemnity against that golfer: accordingly that golfer is not entitled to judgment over of 50% contribution from the father. Truxillo v. Gentilly Med. Bldg. Inc., La.App. 4 Cir. 1969, 225 So.2d 488. Nor, by the same reasoning, does the father's theoretical negligence bar his recovery of medical expenses he paid for his child. By exposing the child to golf-course dangers which are unavoidable if the game is to be played at all, he accepts the burden of medical expenses arising from those unavoidable dangers. But he does not thereby accept the burden of medical expenses from avoidable danger which arises only because of another golfer's negligence: he consents that other golfers may non-negligently cause him medical expense, but he does not consent that they may negligently cause him such expense. Accordingly, the father is not liable to the golfer's insurer for the judgment over and he is entitled to recover the medical expense.
Nor, similarly, is the city of New Orleans liable as operator of the golf course on defendant's third-party demand. Conceivably the golf course operator could be as liable as the parent for allowing too-young children on the golf course, because of the danger of their injury by non-negligently hit stray balls. But the risk such a possible duty is designed to protect against does not include injury by negligently hit balls.
Defendant complains of the trial judge's comment, in response to defendant's explanation that conflicts in testimony caused an objected-to line of cross-examination, "There wasn't too much conflict by that witness who was there. Let's go." However, the trial judge himself, after a discussion at the bench, instructed the jury "Strike that comment. Leave him note that he moved for a mistrial on that comment. Strike the comment. You all will conclude what is conflict and what is not.. . . Disregard that, it is up to you all to determine that." This instruction cured the error of commenting on the evidence. However, defendant further complains of the judge's reference to the motion for a mistrial. Although preferable practice might for the record note such motions at the bench or otherwise out of the jury's hearing, we see no prejudice to defendant. The overall impression we gather is that the trial judge conceded he had erred, but that that mistrial could be avoided by the jury's disregarding his comment.
Defendant finally complains of the judge's instructions to the jury. The trial judge noted for the record, after the jury had retired, "For the sake of convenience *1354 of all concerned . . . counsel agreed to make specific objections to any portions of the general charges and to any special charges given or refused after the jury has retired to consider its verdict." The record thereafter contains the objections. We hold that counsel may not preserve a right to appellate review of jury charges by stipulation that the law for preserving that right not be followed.[3] Once the jury has retired to its deliberation the trial judge can no longer correct any error in his charge, howsoever clearly pointed out by post-retirement objections. Therefore C.C.P. 1793 insists that, to preserve the right of review, the objections must be made while they can still be effective: "A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires. . .." We therefore decline to consider the untimely objections. See Watts v. Aetna Cas. & S. Co., La.App. 2 Cir. 1975, 309 So.2d 402, writ refused La., 313 So.2d 601; Arnold v. U. S. Rubber Co., La.App. 3 Cir. 1967, 203 So.2d 764, writ refused 251 La. 738, 206 So.2d 91.
Judgment on main demand affirmed in its award of $150,000 for the minor but reversed in its rejection of father's claim and judgment rendered for $10,850 with interest from judicial demand for Homer G. Outlaw against Bituminous Insurance Company; judgment on third-party demand affirmed as to dismissal of City of New Orleans and otherwise reversed and demand dismissed. All costs to be paid by defendant.
NOTES
[1] According to plaintiff's surveyor, who measured with the child in the position he said he was in at the time of the accident, the child was approximately 22° 31' to the left of a drive line down the middle of the fairway, and 12° 52' to the left of a drive line aiming at the left edge of the fairway where the fairway angled ("dog-legged") sharply to the left. The jury could have inferred that the latter was the intended drive line.
[2] La Croix v. Middle South Svc. Inc., La.App. 1 Cir. 1977, 345 So.2d 136 writ refused La., 346 So.2d 716; Sanders v. English, La.App. 1 Cir. 1976, 325 So.2d 692; Kelly v. Messina, La.App. 4 Cir. 1975, 318 So.2d 74; Ates v. State Farm Mut. Auto. Ins. Co., La.App. 3 Cir. 1966, 191 So.2d 332.
[3] There is no indication that counsel timely attempted to present objections, but was prevented by the trial judge from doing so. Furthermore, a local custom to make objections after the jury has begun deliberations is inconsistent with C.C.P. 1793 and thus invalid. See 9 Wright & Miller, Federal Procedure and Practice § 2553 (1971).