927 F.2d 736
 Prod.Liab.Rep.(CCH)P 12,768
David H. SMITH and Louise Smith, his Wife,
v.
WALTER C. BEST, INC., a Corporation, Pennsylvania Glass Sand
Corporation, a Corporation and Combustion
Engineering, Inc., a Corporation, Third
Party Defendants,
Manley Brothers, Keener Sand and Clay Co., Whitehead
Brothers, Negley Fire Clay Company, Magneco
Metrel, Inc., American Colloid and Cedar
Heights Co.
David H. SMITH and Louise Smith, his Wife
v.
WHITEHEAD BROTHERS COMPANY.
David H. SMITH and Louise Smith, his Wife
v.
MANLEY BROTHERS.
David H. Smith and Louise Smith, his wife, Appellants.
 No. 90-3077.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 9, 1990.
Decided Nov. 5, 1990.
 
 Janice M. Savinis, Thomas W. Henderson, Craig Vandergift (argued), Henderson & Goldberg, Pittsburgh, Pa., for appellants.
 J.W. Montgomery, III (argued), Debra B. Todd, Laura A. Meaden, Curt Vazquez, Cohen & Grigsby, Pittsburgh, Pa., for appellee Pennsylvania Glass Sand Corp.
 Julie A. Maloney, William M. Wycoff, Stephen J. Poljak, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellee Manley Bros.
 Louis Anstandig, Anstandig, Levicoff & McDyer, Pittsburgh, Pa., for appellee Keener Sand and Clay Co.
 P. Brennan Hart, Zimmer Kunz Loughran Hart, Lazaroff Trenor Banyas & Conaway, Pittsburgh, Pa., for appellee Whitehead Bros.
 Before MANSMANN, ALITO and GARTH, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this products liability action, we are asked to review the district court's determination that Ohio law does not recognize a cause of action based upon strict liability for failure to warn and to examine the district court's evaluation of the sophisticated purchaser defense in the context of negligent failure to warn.
 
 
 2
 Recent Ohio case law establishes the viability of a claim based upon strict liability for failure to warn; the standard governing the manufacturer's duty under this theory is identical to that applicable in cases alleging negligent failure to warn. While the district court erred in predicting that the Ohio Supreme Court would not recognize such a claim, we conclude that this error was harmless. The district court properly resolved the claim of negligent failure to warn by granting summary judgment for the defendants. We predict that the same result would obtain in Ohio under a theory of strict liability for failure to warn. We will, therefore, affirm the order of the district court.
 
 I.
 
 3
 On October 4, 1985, David Smith and his wife filed suit in the United States District Court for the Western District of Pennsylvania claiming injury as a result of Mr. Smith's inhalation of silica dust contained in sand supplied by various parties to his employer, Valley Mould & Iron Company in Hubbard, Ohio.
 
 
 4
 During the period from 1956 until 1984, Mr. Smith was employed at Valley Mould as a foundry laborer, caster, chainman, shake-out man, and chipper. Smith contends that in each of these jobs, he came into contact with sand and, as a result of this contact, developed silicosis.
 
 
 5
 The Smiths' original complaint named as defendants three companies allegedly having supplied sand to Valley Mould: Walter C. Best, Inc.; Pennsylvania Glass Sand Company and Combustion Engineering, Inc. Smith sought to hold these defendants liable for breach of warranty, negligence, and strict liability based upon their failure to provide him with direct warnings concerning the consequences of long-term inhalation of silica dust.
 
 
 6
 In July, 1986, Best and Pennsylvania Glass Sand filed a complaint in order to join as third-party defendants, Manley Brothers, Whitehead Brothers, Keener Sand and Clay Company, Negley Fire Clay Company, Magneco Metrel, Inc., American Colloid, and Cedar Heights Company.[1] In March, 1987, Smith filed two additional complaints adding Whitehead and Manley as defendants and on June 30, 1987, Pennsylvania Glass Sand filed a motion for summary judgment on behalf of itself and the remaining defendants.
 
 
 7
 In January, 1990, the three pending actions were consolidated for all purposes and summary judgment was granted in favor of defendants Pennsylvania Glass Sand and Best and third-party defendants Manley, Keener and Whitehead. In awarding summary judgment, the district court concluded that Pennsylvania choice of law principles required that the claims presented be evaluated under the substantive law of Ohio and that Ohio law does not recognize the application of strict liability to claims premised on a failure to warn. The court also found that the defendant sand suppliers had no duty to warn Smith of potential hazards associated with inhalation of silica dust as Smith was employed by a knowledgeable purchaser of silica-containing sand.
 
 
 8
 It is from the January, 1990 grant of summary judgment that Smith appeals.
 
 II.
 
 9
 In viewing the circumstances of this case against the background of the Pennsylvania choice of law rule, the district court correctly determined that the substantive tort law of Ohio should control. On appeal, the Smiths challenge the district court's conclusion that Ohio law does not recognize the application of strict liability in cases involving failure to warn.
 
 
 10
 Subsequent to the district court decision and during the pendency of this appeal, the Ohio Supreme Court resolved this issue in a manner not predicted by the district court. In Crislip v. TCH Liquidating Company, 52 Oh.St.3d 251, 556 N.E.2d 1177 (1990) the Ohio court resolved all doubt concerning availability of strict liability in cases alleging failure to warn when it concluded that "An individual injured by a known dangerous product may prosecute a strict liability claim arising from allegations of inadequate warning." 556 N.E.2d at 1180.
 
 
 11
 In holding that Ohio recognizes the applicability of strict liability to cases involving failure to warn, the Ohio Supreme Court explained that while the theory of negligence focuses upon the duty of a cautious prudent manufacturer and strict liability analysis focuses instead on consumer expectations, "[c]ommentators and courts have long recognized that both approaches deal with the same question of foreseeability of harm, and are therefore '... two sides of the same standard.' " 556 N.E.2d at 1182 (quoting Welch v. Outboard Marine Corp., 481 F.2d 252, 254 (5th Cir.1973). Thus "[a] manufacturer which would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it." Id. (quoting Phillips v. Kimwood Machine Co., 269 Ore. 485, 493, 525 P.2d 1033, 1037 (1974)).
 
 
 12
 Under Ohio law as articulated in Crislip, the standard imposed upon the defendant meeting a claim of strict liability based upon a failure to warn is the same as that imposed upon the defendant faced with a claim of negligent failure to warn. Under either theory, "there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." Id. Thus, in Crislip where the jury found that the defendant had made the requisite showing with regard to the claim of negligent failure to warn, the trial judge's decision directing a verdict on the strict liability claim was harmless error; the jury's finding for the defendant on the claim of negligent failure to warn necessarily meant that it would have reached the same result on the strict liability claim.
 
 
 13
 In light of Crislip, the critical factor in this case becomes whether the district court erred in granting summary judgment to the defendants on the claim of negligent failure to warn.
 
 III.
 
 14
 In evaluating the Smiths' claim of negligent failure to warn, the district court concluded that the defendants were entitled to summary judgment on the basis of what it referred to as the "knowledgeable purchaser defense." The theory underlying this defense is that sellers should be permitted to "shift liability to their immediate purchasers if they reasonably warned those purchasers.... Moreover, sellers act reasonably if they do not warn intermediate purchasers of dangers of which the intermediate purchasers are already knowledgeable." Note, Failures to Warn and the Sophisticated User Defense, 74 Va.L.Rev. 579, 589 (1988). According to this theory, then, liability for failure to warn should fall upon the knowledgeable purchaser having access to the end user.
 
 
 15
 The parties here do not contest the district court's consideration of the defense or its prediction that the defense would be recognized in Ohio.[2] The Smiths argue, instead, that the district court failed to consider properly one of the factors to be weighed in determining the availability of the defense.
 
 
 16
 The district court began its analysis with Section 388 of the Restatement (Second) Torts (1971), which sets out the general principles governing a product supplier's obligation to warn users of hazards associated with that product. Comment n to Section 388 delineates the circumstances in which a warning to a knowledgeable intermediary can serve to absolve a supplier of its duty to warn. No rigid rules determine whether a seller is justified in relying on an intermediary to communicate potential hazards to ultimate users. Comment n instead lists several factors to be considered in determining whether a seller has acted reasonably in relying on an intermediary to pass on relevant information.
 
 
 17
 These include (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that he directly warn all users.
 
 
 18
 Goodbar v. Whitehead Brothers, 591 F.Supp. 552, 557 (W.D.Va.1984) aff'd sub nom. Beale v. Hardy, 769 F.2d 213 (4th Cir.1985).
 
 
 19
 The "comment recognizes that a balancing of these considerations is necessary in light of the fact that no single set of rules could possibly be advanced that would automatically cover all situations." Id. Although this comment indicates that a seller will be held accountable for the "known or knowable character" of an intermediary, the seller is entitled to rely on intermediaries performing in accordance with their duties or normal procedures. The comment provides that "[m]odern life would be intolerable unless one were permitted to rely to a certain extent on others doing what they normally do, particularly if it is their duty to do so." Restatement at 308.
 
 
 20
 Using comment n as a guide, the district court evaluated the factors listed and concluded that, under the circumstances presented, the sand suppliers owed the Smiths no duty to warn directly. In reaching this conclusion, the court relied primarily upon the decision in Goodbar.[3]
 
 
 21
 The district court focused upon whether Valley Mould was a knowledgeable purchaser of silica sand and upon whether the sand suppliers failed to exercise reasonable care in relying upon Valley Mould to provide appropriate employee warnings. The court followed the Goodbar analysis, finding ample record evidence to support the conclusion that Valley Mould was a knowledgeable industrial purchaser of silica sand, familiar with the dangers associated with inhaling silica dust and with proper dust control methods. The court also concluded that Valley Mould was in a superior position to supply effective employee warnings. As in Goodbar, the sand was delivered in bulk and was unpackaged. The plaintiffs had no connection with and were unable to observe the delivery process or the delivery vehicles, thus making reliable direct warnings virtually impossible.
 
 
 22
 On appeal, the Smiths focus particularly on the factor set forth in comment n which indicates that "the reliability of the third party as a conduit of necessary product information" should be considered in determining whether a supplier's reliance on an employer to provide adequate warning is reasonable. The Smiths argue that neither the court in Goodbar nor the district court here addressed the sand suppliers' familiarity with Valley Mould's warning procedures and precautionary measures, or evaluated whether the suppliers took affirmative steps to determine whether Valley Mould was a reliable conduit.[4] They further argue that the reasonableness issue raised is a jury question, not appropriate for summary judgment.[5]
 
 
 23
 Where it has been established that the employer in fact recognized the danger and was in a superior position to warn, we do not believe it appropriate to focus the sophisticated purchaser analysis solely upon the supplier's having satisfied itself that information was being communicated. A weighing of the totality of the factors set forth in comment n determines reasonableness.
 
 
 24
 Based upon the record in this case we believe that it was reasonable for the sand suppliers to assume that Valley Mould knew of the dangers of silica given the state of common medical knowledge at all relevant times, the various statutes and regulations governing silica, and the fact that Valley Mould was a member of the Industrial Health Foundation, a non-profit organization providing information to its members relative to occupational diseases (including silicosis) and their prevention. This reasonable assumption of knowledge, coupled with the duty owed by Valley Mould to provide its workers with a safe working environment and the virtual impossibility of the sand suppliers reaching the ultimate users, is, in our view, sufficient to satisfy the Restatement standard and to justify the sand suppliers' reliance on Valley Mould, as a knowledgeable purchaser, to warn the ultimate sand users. The sand suppliers, therefore, owed the Smiths no duty to warn and summary judgment on the issue of negligent failure to warn was appropriate.
 
 IV.
 
 25
 The final question which must be resolved is whether the district court's grant of summary judgment on the claim of negligent failure to warn is necessarily dispositive of the strict liability claim.
 
 
 26
 There is a split of authority as to the availability of the sophisticated purchaser defense in cases alleging strict liability for failure to warn. Some jurisdictions, notably Pennsylvania and New Jersey, have held that the defense is available only in cases involving negligent failure to warn. See, e.g. Whitehead v. St. Joe Lead Co., 729 F.2d 238 (3d Cir.1984) (applying New Jersey law); Brown v. Caterpillar Tractor Co., 741 F.2d 656, 660 (3d Cir.1984) (applying Pennsylvania law); Menna v. Johns-Manville Corp., 585 F.Supp. 1178, 1184 (D.N.J.1984), aff'd, 772 F.2d 895 (3d Cir.1985). See also Russo v. Abex, 670 F.Supp. 206 (E.D.Mich.1987). These jurisdictions hold that where a seller is under a duty to warn all foreseeable users of the dangerous product, the risk of an employer's failure to warn is imputed to the seller.
 
 
 27
 Other courts in the Fourth Circuit have held that the sophisticated purchaser defense is available in cases alleging failure to warn whether based on negligence or strict liability. The availability of the defense in strict liability cases was discussed in detail in Higgins v. E.I. DuPont de Nemours, Inc., 671 F.Supp. 1055 (D.Md.1987). The court there expressed confidence that the Court of Appeals of Maryland would recognize the defense. It noted that no Maryland case had recognized any doctrinal distinction between Sec. 388 negligent and Sec. 402A strict liability failure to warn cases.
 
 
 28
 Noting the conclusion of W.L. Prosser and W.P. Keaton, Torts Sec. 99 at 697 (5th ed. 1984) that "[a]lthough [strict liability for failure to warn] is sometimes referred to as strict liability, is really nothing more than a ground of negligence liability....," the court wrote:
 
 
 29
 [In] addition to the fact that the authorities reviewed above have concluded that the standards for negligent and strict liability failure to warn are essentially the same, this court independently finds nothing about failure to warn in the context of strict liability that is inconsistent with the principles encompassed in comment n to Sec. 388. Quite simply, both negligent and strict liability failure to warn involve the same questions of scope of duty and causation: (1) To what extent did the supplier act reasonably in communicating or failing to communicate a warning? (2) Given information supplied by the supplier, was the failure of a sophisticated user to communicate an effective warning to an employee or other ultimate user an intervening cause of injury? Prosser points out, it is really only the immunity of strict liability to negligence-based defenses (like contributory negligence) that distinguishes strict liability from negligence in failure to warn cases. This distinction does not militate against making the sophisticated user/bulk supplier defense available in a Sec. 402A strict liability failure to warn claim.
 
 671 F.Supp. at 1060.[6]
 
 30
 We include the lengthy quotation from Higgins because we believe that its logic dictates the result here. In the Crislip decision, the Ohio Supreme Court recognized explicitly the unitary standard controlling both the negligence and strict liability theories of failure to warn. We predict that the Ohio court would find the logic of Higgins persuasive and would hold that the sophisticated user defense is available under both theories. Therefore, where the district court acted properly in granting summary judgment on the claim of negligent failure to warn, summary judgment on the strict liability claim would also be appropriate.
 
 V.
 
 31
 For the reasons detailed above, we find that the substantive law of Ohio controls in this case and that, while the district court erred in concluding that strict liability for failure to warn is not cognizable in that state, the error was harmless. The grant of summary judgment to the defendant sand suppliers will be affirmed.
 
 
 
 [1]
 Combustion Engineering, Negley, Magneco, American Colloid and Cedar Heights were ultimately dismissed from the suit or granted summary judgment. No issue involving these corporations is raised here
 
 
 [2]
 The defendants argue that the Court of Appeals for the Sixth Circuit, applying Ohio law, has already recognized availability of this defense in Adams v. Union Carbide, 737 F.2d 1453 (6th Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). In Adams, the plaintiff sued Union Carbide for failing to provide direct warnings of dangers associated with chemicals supplied to her employer, General Motors. Where the record established that General Motors had been given warnings by Union Carbide and that Union Carbide had relied upon General Motors to communicate these warnings to its employees, Union Carbide was held to have met its duty to warn; no direct warnings were necessary
 While the district court concluded that Adams was not a true "sophisticated purchaser" case because, unlike the case here, warnings were provided by the supplier to the employer, the commentaries have categorized the case as one involving the sophisticated purchaser defense. See, Note, Failures to Warn and the Sophisticated User Defense, 74 Va.L.Rev. 579, 605 (1988). We support this characterization and note that there are a number of other cases involving warnings to intermediaries which have also been characterized as sophisticated purchaser cases. See, e.g., Cook v. Branick Mfg., Inc., 736 F.2d 1442, 1446 (11th Cir.1984).
 
 
 [3]
 Goodbar involved facts virtually identical to those alleged here. Employees of a Virginia foundry filed suit against various sand suppliers alleging the suppliers' negligent failure to warn directly of the dangers associated with exposure to silica-containing sand. The court reasoned that resolution of the matter turned "upon whether the requirements of [Restatement] clause (c) had been met, namely, whether the Defendants failed to exercise reasonable care in relying upon the foundry to supply its employees with the necessary information to satisfy the duty to warn." 591 F.Supp. at 557. Focusing on the reasonableness standard, the court looked to comment n in order to weigh the various listed factors
 The court, finding evidence that the foundry has possessed extensive knowledge of the dangers of silica dust and dust control methods, granted summary judgment in favor of the sand suppliers. The court also found that, on the facts presented, the suppliers had no duty to warn the employees since the employer bore primary responsibility for providing a safe workplace and was in the best position to communicate effective warnings to its employees. The court then concluded that "when the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated." 591 F.Supp. at 561.
 
 
 [4]
 The plaintiffs cite Willis v. Raymark Industries, Inc., 905 F.2d 793 (4th Cir.1990), and Dendinger v. Chrysler Plastics Products Corp., No. C-87-7117 (N.D.Ohio Oct. 20, 1987), for the proposition that a supplier must take affirmative steps to determine whether its purchasers are conveying requisite warnings. These cases involved circumstances where it would have been feasible for the supplier to warn ultimate users; the other comment n difficulties identified in Goodbar were not present
 
 
 [5]
 There is support for the proposition that reasonableness may be determined as a matter of law. See, Adams, 737 F.2d at 1543 and Goodbar, 591 F.Supp. at 552. Given the position taken by the Court of Appeals for the Sixth Circuit in Adams and the similarity of the Ohio court's approach in Crislip to the approach adopted in the Fourth Circuit, we predict that the Ohio court would hold with those courts which have found that the question of reasonableness in this context may be decided as a matter of law
 Even if we did not predict the holding of the Ohio Supreme Court, we would nevertheless defer to the Sixth Circuit interpretation of Ohio law. See, e.g., Brockett v. Spokane Arcades, Inc. 472 U.S. 491, 499-500, 105 S.Ct. 2794, 2799-2800, 86 L.Ed.2d 394 (1985) ("Normally ... we defer to the construction of a state statute given it by the lower federal courts ... not only to 'render unnecessary review of their decisions in this respect,' ... but also to reflect our belief that district courts and courts of appeals are better schooled in and more able to interpret the laws of their respective states."), cited in Frisby v. Schultz, 487 U.S. 474, 482, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988).
 
 
 [6]
 The same conclusion regarding the availability of the sophisticated purchaser defense is reached in Singleton v. Manitowac Co., Inc., 727 F.Supp. 217 (D.Md.1989) and Sara Lee v. Homasote Corp., 719 F.Supp. 417 (D.Md.1989)